IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZINNA WOODS, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 07-252-JJF |
| | : |
| MICHAEL J. ASTRUE, | : |
| Commissioner of Social | : |
| Security, | : |
| | : |
| Defendant. | : |
| | : |
| | : |

David J. Lyons, Esquire of THE LYONS LAW FIRM, Wilmington, Delaware.

Attorney for Plaintiff.

David C. Weiss, Esquire, Acting United States Attorney, and Dina White Griffin, Esquire, Special Assistant United States Attorney, of the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.
Of Counsel:  Eric P. Kressman, Esquire, Acting Regional Chief Counsel; Heather A. Benderson, Esquire, Assistant Regional Counsel, of the SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania.

Attorneys for Defendant.

**MEMORANDUM OPINION**

April 30, 2009
Wilmington, Delaware

Farnan, District Judge.

Presently before the Court is an appeal pursuant to 42 U.S.C. § 405(g) filed by Plaintiff, Zinna Woods, seeking review of the final administrative decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act (the "Act"), respectively.  42 U.S.C. §§ 401-433, 1381-1382f.  Plaintiff has filed a Motion For Summary Judgment (D.I. 17) requesting the Court to remand this matter to the Commissioner for an immediate award of benefits, or alternatively, for further findings and/or proceedings.  In response to Plaintiff's Motion, Defendant has filed a Cross-Motion For Summary Judgment (D.I. 19) requesting the Court to affirm the Commissioner's decision.  For the reasons set forth below, Defendant's Cross-Motion For Summary Judgment will be granted, and Plaintiff's Motion For Summary Judgment will be denied.  The decision of the Commissioner dated August 23, 2005, will be affirmed.

**BACKGROUND**

**I.     Procedural Background**

Plaintiff filed an application for DIB and SSI on July 31, 2003, alleging disability since February 1, 2002, due to upper and lower back pain, pain shooting down her legs, and depression.

1

(Tr. 64-66, 71, 88). Plaintiff's application was denied initially and upon reconsideration. (Tr. 46-50, 54-59). Thereafter, Plaintiff requested a hearing before an administrative law judge (the "A.L.J."). On August 23, 2005, the A.L.J. issued a decision denying Plaintiff's application for DIB and SSI. (Tr. 8-21). Following the unfavorable decision, Plaintiff timely appealed to the Appeals Council. (Tr. 22). On March 20, 2007, the Appeals Council denied Plaintiff's request for review (Tr. 5-8), and the A.L.J.'s decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000).

After completing the process of administrative review, Plaintiff filed the instant civil action pursuant to 42 U.S.C. § 405(g) seeking review of the A.L.J.'s decision denying her claims for DIB and SSI. In response to the Complaint, Defendant filed an Answer (D.I. 13) and the Transcript (D.I. 16) of the proceedings at the administrative level.

Thereafter, Plaintiff filed a Motion For Summary Judgment and Opening Brief in support of the Motion. In response, Defendant filed a Cross-Motion For Summary Judgment and a Combined Opening Brief in support of his Cross-Motion and in opposition to Plaintiff's Motion requesting the Court to affirm the A.L.J.'s decision. Plaintiff has not filed a Reply Brief. Accordingly, the Court will proceed to address the parties'

Motions on the papers filed to date.

**II. Factual Background**

    A.   <u>Plaintiff's Medical History, Condition and Treatment</u>

At the time of the A.L.J.'s decision, Plaintiff was forty-three years old. (Tr. 304). Plaintiff has a high school education and past work experience as a cleaner and custodian. (Tr. 305). Plaintiff alleges disability since February 1, 2002. (Tr. 64 ). Plaintiff's detailed medical history is contained in the record; however, the Court will provide a brief summary of the pertinent evidence.

    1.   Physical Impairments

Plaintiff has a history of complaints regarding low back pain. (Tr. 153-171). An MRI of Plaintiff's lumbar spine taken in 2002 revealed degenerative changes and central disc protrusions at L4-5 and L5-S1 (Tr. 143-144.) An MRI of her cervical spine taken in 2002 revealed mild discogenic changes and the left neural foramen at C4-5 was slightly narrowed by osteophyte. (Tr. 141). An MRI of Plaintiff's thoracic spine was negative. (Tr. 141-142).

On May 14, 2002, Plaintiff attended an initial physical therapy evaluation, but she failed to appear for her next three appointments and was discharged. (Tr. 138-140). Three months later, she underwent a second physical therapy evaluation with Devin Robinson, a physical therapist. (Tr. 147). Mr. Robinson

noted that Plaintiff stood with normal alignment of her sacrum and with no shift in her lumbar spine. She had active range of motion within normal limits for all motions of her trunk and her reflexes, strength and range of motion were also within normal limits for her lower extremities. Plaintiff attended six physical therapy sessions and improvement was noted in her progress. (Tr. 146).

In 2003, Plaintiff underwent another MRI of her lumbar spine which showed an L4-5 annular bulge and an L5-S1 annular bulge and a small central disc herniation. (Tr. 150.) An MRI of Plaintiff's thoracic spine showed mild degenerative disc disease with no evidence of disc herniation. (Tr. 149.)

On November 13, 2003, Plaintiff was examined by Michael Balzarini, a nurse practitioner affiliated with Bikash Bose, M.D., a neurosurgeon. Mr. Balzarini reported that Plaintiff's straight leg test was positive on the right side at approximately 60% for low back pain on the left side, and that her motor strength and pinprick sensation were intact in her lower extremities. (Tr. 151-152). After consulting with Dr. Bose, Mr. Balzarini recommended, and Plaintiff received, epidural steroid and nerve block injections, which provided Plaintiff with some relief from her back pain. (Tr. 181).

On January 13, 2004, Plaintiff's medical records were reviewed by a state agency physician, Vinod Keterie, M.D., who

concluded that Plaintiff could perform light work that required only occasional climbing, balancing, stooping, kneeling, crouching or crawling. (Tr. 172-179).

Approximately two months later, one of Plaintiff's physicians, Maria Castro, M.D. completed a "Medical Certification" form for Delaware Health and Social Services in connection with Plaintiff's application for public assistance. Dr. Castro opined that Plaintiff was unable to work and that her condition would be expected to last for six to twelve months. (Tr. 263).

On July 1, 2004, Plaintiff was also examined by Irene Szeto, M.D., at the request of the Commissioner. Plaintiff's examination was essentially normal in all areas, and Dr. Szeto noted few objective findings to support Plaintiff's complaints of upper and lower back pain. (Tr. 209-219).

On July 10, 2004, Plaintiff records were reviewed by a second state agency physician, John Kramer, M.D. The state agency physician found Plaintiff's symptoms to be disproportionate to her diagnostic studies and physical examinations which were essentially unremarkable. (Tr. 212-219).

On January 21, 2005, Plaintiff was examined by Jose Marciano S. Castro, M.D., for complaints of chronic lower back pain, COPD and drug abuse. Dr. Castro diagnosed Plaintiff with acute exacerbation of COPD and low back pain. He prescribed Percocet,

Clonidine, Zoloft and Risperdal. Subsequent visits with her physician were relatively unchanged as far as her back pain was concerned, but her COPD improved. (Tr. 254-255, 247, 250).

Another MRI of Plaintiff's lumbar spine was taken in June 2005, and showed stable lower lumbar annual bulging as compared with the 2003 study. There was a persistent small disc herniation at L5-S1 and a small annular tear may have developed at L4-5. (Tr. 257).

On July 13, 2005, Plaintiff was examined by Mohamed Ahmed, M.D. at the Pain Clinic at St. Francis Hospital. (Tr. 272-273). On his examination, Dr. Ahmed noted mild tenderness over Plaintiff's lumbar spine and significant tenderness over the SI joint. (Tr. 273). Dr. Ahmed diagnosed Plaintiff with chronic low back pain, lower extremity radicular pain secondary to herniated disc, right SI joint dysfunction, and rule-out lumbar facet syndrome. He continued Plaintiff on her current medications, but switched her prescription for Motrin to Naprosyn and added Ultram. He also scheduled Plaintiff for a lumbar epidural steroid injection under fluoroscopy. (Tr. 273).

On July 20, 2005, Dr. Maria Castro completed a second "Medical Certification" for Delaware Health and Social Services. (Tr. 264). Dr. Castro again opined that Plaintiff was unable to work, but that her condition was expected to last for two months.

6

B.  The A.L.J.'s Decision

At the hearing, Plaintiff was represented by counsel. Plaintiff testified that she attempted work twice since filing for DIB and SSI. Plaintiff worked in food services and was laid off for the winter season, but not recalled. (Tr. 305-306). Plaintiff testified that she missed work because of her back pain. (Tr. 312). Plaintiff's attorney asked Plaintiff whether she could continue to perform her food services job if they had called her back to work, and Plaintiff responded affirmatively, provided that they allowed her to take the interval breaks she needed. However, Plaintiff also testified that she would probably miss at least one day of work per week. (Tr. 313).

Plaintiff also testified that she attempted cleaning jobs. At a cleaning job that lasted three weeks, Plaintiff testified that she worked three hours a night five nights a week, and that she was required to stand and bend frequently. Plaintiff testified that she missed four days of work during that job. (Tr. 313-314).

Plaintiff also testified that she worked an 8-hour shift cleaning at Goodwill from June 2002 to November 2002. Plaintiff testified that she would miss work one day a week, and that she was ultimately fired for missing work. Plaintiff's attorney asked her if she thought she could continue performing that cleaning job, and Plaintiff testified that she could, because she

7

could work at her own pace. (Tr. 314-315).

Plaintiff testified that she experiences back pain, but that she does not have spasms. (Tr. 306-307). She uses a cane because her knees give out causing her to fall. (Tr. 307). Plaintiff further testified that she can care for her own personal needs, but that her daughter performs the household chores and grocery shopping for her. (Tr. 308).

Plaintiff also testified that she suffers from depression and that she spends some days crying all day. However, Plaintiff testified that she would still get out of bed on a bad day and prepare her meals and that her concentration and attention would be unaffected. (Tr. 320-321). Yet, Plaintiff went on to testify that she would be unable to watch a 90 minute movie all the way through on a bad day, but that she could do so on a good day. (Tr. 322). Plaintiff testified that she could also lift a gallon of milk and a vacuum cleaner and that she had no difficulty bending at the waist and could reach her mid-calf. (Tr. 324). Plaintiff testified that she had no problem bending down from a standing position to pick things up, but that she sometimes has difficulty climbing stairs. (Tr. 325). According to Plaintiff, she can only stand for 30 minutes, and she cannot sit for too long. (Tr. 310). However, she testified that at the food services job, she stood for a period of three hours with "a five minute interval to sit down." (Tr. 311).

During the hearing and at various physician visits, Plaintiff admitted to cocaine use. At the hearing, Plaintiff testified that she had been abstinent for about eight months until a relapse about five months before the hearing. (Tr. 309, 326).

The A.L.J. then asked the vocational expert to consider a hypothetical person who is a younger individual with Plaintiff's education, work experience, and "all the symptoms and limitations that the claimant stated here today during the hearing that she had." (Tr. 328). The A.L.J. then asked the vocational expert if such an individual could do any kind of jobs, and the vocational expert testified that she could perform several jobs under the light classification including (1) a dietary aid with 6,000 jobs locally and 78,000 nationally, (2) a cashier, with 21,200 jobs locally and 359,000 nationally, and (3) a counter attendant with 18,600 jobs locally and 281,000 nationally. (Tr. 328). The A.L.J. then altered his hypothetical to include a sit stand option and a limitation of simple, routine and repetitive tasks that would not require a lot of concentration. In response, the vocational expert identified the same three jobs. (Tr. 323).

Plaintiff's attorney asked the vocational expert if these jobs could be performed if a person was required to lay down an hour per day, and the vocational expert testified that these jobs would be precluded with that limitation. (Tr. 331). The

vocational expert also testified that a person who missed one day of work per week could not perform any work in the national economy. (Tr. 331).

In his decision dated March 16, 2005, the A.L.J. found that Plaintiff suffered from COPD and degenerative disc disease, which are "severe" impairments, but which do not meet or medically equal a listing. The A.L.J. also found that Plaintiff's allegations regarding the intensity, duration and limiting effects of her symptoms were not entirely credible in light of the findings and reports of her treating and examining physicians. The A.L.J. further found that Plaintiff had the residual functional capacity to perform her past relevant work as a custodian, and therefore, she was not under a disability within the meaning of the Act. (Tr. 25-32).

## STANDARD OF REVIEW

Findings of fact made by the Commissioner of Social Security are conclusive, if they are supported by substantial evidence. Accordingly, judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. Id. In other words, even if the reviewing court would have decided the

case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence. Id. at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 555 (1988).

With regard to the Supreme Court's definition of "substantial evidence," the Court of Appeals for the Third Circuit has further instructed, "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the substantial evidence standard embraces a qualitative review of the evidence, and not merely a quantitative approach. Id.; Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**DISCUSSION**

**I.   Evaluation Of Disability Claims**

Within the meaning of social security law, a "disability" is

defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." 20 C.F.R. §§ 404.1505, 416.905. In order to qualify for disability insurance benefits, the claimant must establish that he or she was disabled prior to the date he or she was last insured. 20 C.F.R. § 404.131, Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990). The claimant bears the initial burden of proving disability. 20 C.F.R. §§ 404.1512(a), 416.912(a); Podeworthy v. Harris, 745 F.2d 210, 217 (3d Cir. 1984).

In determining whether a person is disabled, the Regulations require the A.L.J. to perform a sequential five-step analysis. 20 C.F.R. §§ 404.1520, 416.920. In step one, the A.L.J. must determine whether the claimant is currently engaged in substantial gainful activity. In step two, the A.L.J. must determine whether the claimant is suffering from a severe impairment. If the claimant fails to show that his or her impairment is severe, he or she is ineligible for benefits.

12

<u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999).

If the claimant's impairment is severe, the A.L.J. proceeds to step three. In step three, the A.L.J. must compare the medical evidence of the claimant's impairment with a list of impairments presumed severe enough to preclude any substantial gainful work. <u>Id.</u> at 428. If the claimant's impairment meets or equals a listed impairment, the claimant is considered disabled. If the claimant's impairment does not meet or equal a listed impairment, the A.L.J.'s analysis proceeds to steps four and five. <u>Id.</u>

In step four, the A.L.J. is required to consider whether the claimant retains the residual functional capacity to perform his or her past relevant work. <u>Id.</u> The claimant bears the burden of establishing that he or she cannot return to his or her past relevant work. <u>Id.</u>

In step five, the A.L.J. must consider whether the claimant is capable of performing any other available work in the national economy. At this stage the burden of production shifts to the Commissioner, who must show that the claimant is capable of performing other work if the claimant's disability claim is to be denied. <u>Id.</u> Specifically, the A.L.J. must find that there are other jobs existing in significant numbers in the national economy, which the claimant can perform consistent with the claimant's medical impairments, age, education, past work

experience and residual functional capacity. Id. In making this determination, the A.L.J. must analyze the cumulative effect of all of the claimant's impairments. At this step, the A.L.J. often seeks the assistance of a vocational expert. Id. at 428.

## II. Whether The A.L.J.'s Decision Is Supported By Substantial Evidence

By her Motion, Plaintiff contends that the A.L.J.'s decision is not supported by substantial evidence. Specifically, Plaintiff contends that the A.L.J. (1) failed to give appropriate weight to the opinion of Plaintiff's treating physician, Dr. Maria Castro, (2) failed to properly evaluate Plaintiff's subjective complaints of pain and other symptoms, (3) failed to properly analyze the vocational expert's testimony, and (4) ignored and/or misconstrued the relevant evidence.

The Court has reviewed the decision of the A.L.J. in light of the record evidence and concludes that it is supported by substantial evidence. The A.L.J. expressly addressed the opinion of Dr. Castro that Plaintiff was disabled or unable to work, and concluded that it was not dispositive. This is consistent with controlling law which provides that a treating physician's statement that a plaintiff is unable to work or is disabled is not dispositive. Rather, a plaintiff's RFC and the ultimate question of whether a plaintiff meets the statutory definition for disability are issues reserved exclusively for determination by the A.L.J. 20 C.F.R. §§ 404.1527(e)(1)-(3); 416.927(e)(1)-

(3); SSR 96-5p, 1996 WL 374183, *2.  The A.L.J. also considered Plaintiff's medical history, including the opinions and treatment notes of Plaintiff's physicians, and concluded that the medical evidence did not support Plaintiff's allegations of disability. Indeed, Dr. Castro's opinion that Plaintiff was not disabled did not identify any functional limitations imposed on Plaintiff, and the medical test results and examinations performed on Plaintiff revealed no such limitations or conditions that would give rise to significant limitations.

As for Plaintiff's subjective complaints of pain, the A.L.J. has the discretion to evaluate the plaintiff's credibility and "'arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant.'"  Gantt v. Commissioner Social Sec., 2006 WL 3081094, *2 (3d Cir. Oct. 31, 2006) (citations omitted). Subjective complaints alone are insufficient to establish disability and allegations of pain must be supported by objective medical evidence.  Id., 20 C.F.R. §§ 404.1529, 416.929.  In this regard, the A.L.J. must first determine whether the plaintiff suffers from a medical impairment that could reasonably be expected to cause the alleged symptoms.  Once the A.L.J. makes this determination, he or she must evaluate the intensity and persistence of the pain or symptoms, and the extent to which they affect the individual's ability to work.  Specifically, the

15

A.L.J. is required to consider such factors as (1) plaintiff's daily activities; (2) the duration, location, frequency, and intensity of the pain and other symptoms; (3) any precipitating and aggravating factors; (4) any medication taken to alleviate pain or other symptoms; (5) treatments other than medication; (6) any other measures used to relieve the symptoms; and (7) other factors concerning functional limitations or limitations due to pain or other symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii), 404.1529(c)(3)(i)-(vii).

This analysis requires the ALJ to assess the plaintiff's credibility to determine the extent to which he or she is accurately stating the degree of pain and/or the extent to which he or she is disabled by it. See 20 C.F.R. §§ 404.1529(c); 416.929(c). Generally, the A.L.J.'s assessment of a plaintiff's credibility is afforded great deference, because the A.L.J. is in the best position to evaluate the demeanor and attitude of the plaintiff. See e.g. Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001); Griffith v.. Callahan, 138 F.3d 1150, 1152 (7th Cir. 1998); Wilson v. Apfel, 1999 WL 993723, *3 (E.D.Pa. Oct. 29, 1999). However, the A.L.J. must explain the reasons for his or her credibility determinations. Schonewolf v. Callahan, 972 F. Supp. 277, 286 (D.N.J. 1997) (citations omitted).

In this case, the A.L.J. expressly considered Plaintiff's credibility, including her allegations regarding the intensity,

16

duration and limiting effects of her symptoms and found that Plaintiff's testimony regarding her symptoms was not entirely credible in light of Plaintiff's objective medical tests, the reports and findings by her treating and examining physicians, and the extent of her daily activities, including her own statements on daily activities questionnaires and to physicians that she is able to cook meals, go for walks, and perform moderate household cleaning like washing dishes and vacuuming a room at a time. (Tr. 109, 210). The A.L.J. also went on to describe the results of several of Plaintiff's physical examinations, including medical reports that Plaintiff had 5/5 motor strength of the lower extremities, could lift up to 25 pounds, and had no significant limitations on her range of motion. The A.L.J. concluded that this evidence was inconsistent with the extent and severity of the symptoms alleged by Plaintiff, and the Court finds no error in the A.L.J.'s analysis or conclusions.

With respect to the A.L.J.'s conclusion that Plaintiff could return to her past relevant work as a cleaner for Goodwill, the Court likewise concludes that substantial evidence supports the A.L.J.'s decision. Notably, Plaintiff testified that, but for her absences from work, she could perform the physical demands and functions of her job as a cleaner for Goodwill.[1]  (Tr. 316).

---

[1]    Malloy v. Commissioner of Soc. Sec., 306 Fed. Appx. 761, *4 (3d Cir. Jan. 13, 2009) ("An individual retains the

17

Given that the A.L.J. reasonably determined that Plaintiff's testimony regarding the extent and severity of her symptoms was not entirely credible, the Court cannot conclude that the A.L.J. erred in discounting Plaintiff's assessment that she would be required to miss one day of work per week.

At step four, the A.L.J. need not rely on the testimony of a vocational expert and the claimant carries the burden of establishing that she cannot perform her past relevant work. In light of Plaintiff's testimony, the Court cannot conclude that Plaintiff carried her burden.

Alternatively, the Court concludes that even though the A.L.J. did not proceed to step five, sufficient evidence was adduced at the hearing from the vocational expert to carry the Commissioner's burden at step five of demonstrating that the Plaintiff could perform other work existing in significant numbers in the national economy. See Lamorey v. Barnhart, 158 Fed. Appx. 361, 364 (2d Cir. 2006); Comeaux v. Astrue, 2007 WL 4759401, *3 (W.D. La. Dec. 11, 2007) (Report and Recommendation). Specifically, the A.L.J. provided the vocational expert with a hypothetical that adequately took into account the credible limitations identified by Plaintiff and supported by the medical evidence in the record, and the vocational expert identified

---

capacity to perform her past relevant work when she can perform the functional demands and duties of the job as she actually performed it or as generally required by employers in the national economy.") (citing Soc. Sec. Rul. 82-61 and 82-62).

18

several jobs such a hypothetical person could perform. Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999); Chrupcala v. Heckler, 829 F .2d 1269, 1276 (3d Cir. 1987).

In sum, the Court concludes that substantial evidence supports the A.L.J.'s decision that Plaintiff is not disabled, and the Court cannot conclude that the A.L.J. erred in his analysis of Plaintiff's claims. Accordingly, the Court will grant Defendants' Cross-Motion For Summary Judgment.

### CONCLUSION

For the reasons discussed, the Court will grant Defendant's Cross-Motion For Summary Judgment and deny Plaintiff's Motion For Summary Judgment. The decision of the Commissioner dated August 23, 2005, will be affirmed.

An appropriate Order will be entered.